Jack & Ida Lustman v. Commissioner.
Lustman v. Commissioner
Docket No. 61630.
United States Tax Court
T.C. Memo 1960-116; 1960 Tax Ct. Memo LEXIS 172; 19 T.C.M. (CCH) 617; T.C.M. (RIA) 60116; June 7, 1960
*172 Jack Lustman, pro se, 7413 Drexel Road, Philadelphia, Pa. Albert J. O'Connor, Esq., for the respondent. FISHER
Memorandum Findings of Fact and Opinion FISHER, Judge: Respondent determined deficiencies in income tax against petitioners as follows: Year
Deficiency
1949
$14,728.78
1950
1,809.92
The issues before us are whether petitioners have met the burden of proof of error in respondent's determinations (a) disallowing certain claimed purchases of merchandise for 1949; (b) disallowing certain miscellaneous manufacturing expense for 1949; (c) disallowing certain commission expense for 1950; (d) disallowing automobile expense, in part, for 1949; (e) disallowing, in part, depreciation of automobile for 1950; (f) failing to allow employees' back pay claimed to have accrued in 1949 and 1950; and (g) disallowing, in part, deductions for medical expenses for 1949 and 1950. Findings of Fact The petitioners are husband and wife. During the taxable years 1949 and 1950, they resided in Philadelphia, Pennsylvania. They filed joint income tax returns for the taxable years 1949 and 1950 with the collector of internal revenue for the first district of *173 Pennsylvania. In addition to their original joint return for the taxable year 1949, filed March 15, 1950, petitioners filed an amended joint return for that year on October 13, 1950. The adjustments made in the statutory notice of deficiency are based on the amended 1949 return. During the taxable years 1949 and 1950, the petitioner, Jack Lustman (hereinafter referred to as petitioner) carried on a hosiery manufacturing business as a sole proprietor under the name of Myerstown Hosiery Mills at Myerstown, Pennsylvania. Petitioner's business income was reported under the accrual method and on the calendar year basis. During the years 1949 and 1950, petitioner was employed by L. B. Hosiery Co., Inc., at Myerstown, Pennsylvania. This corporation is now inactive, the last known address being a post office box rented by M. L. Lustman, brother of petitioner. It maintained books of account, including a ledger account for accounts receivable. The profit and loss statement of Myerstown Hosiery Mills contained in petitioners' amended 1949 return included an item in the amount of $35,897 entitled "Merchandise Purchased for Resale," and an item in the amount of $1,394.81 entitled "Miscellaneous *174 Manufacturing Expense" as part of the cost of goods sold. When the examining agent asked petitioner and his accountant for substantiation and explanation of these items, he was referred, in partial explanation, to the following journal entry which appeared in the Myerstown Hosiery books of account: Finished goods purchases
$31,897
Misc. mfg. expenses
819
Accounts payable others (L. B.
Hosiery)
$32,716
To record purchases from L. B.
Hosiery not entered on books.
This stock was originally pur-
chased by L. B. Hosiery from
Camille Hosiery on following
invoices: Order No.
10/4/49
49-218
$ 819.00
(bags and seal-
ing tape)
10/4/49
49-219
14,176.00
(hosiery)
10/5/49
49-220
17,721.00
(hosiery)
The above journal entry was dated "6/30/50 as of 12/31/49." The entry was made after the filing of petitioners' original 1949 return on March 15, 1950. No reciprocal entry appeared on the books of L. B. Hosiery, such as a debit to accounts receivable and credit to an income account. No checks, bills, or vouchers were produced in substantiation when requested during the revenue agent's examination. *175 The profit and loss statement of Myerstown Hosiery Mills in petitioners' 1950 return included an item amounting to $6,210 as "Commissions" under selling expenses. When the examining agent asked petitioner and his accountant for substantiation and explanation of this item, he was referred, in partial explanation, to the following journal entry in the Myerstown Hosiery books of account: Commissions
$4,740.32
Accounts payable L. B. Ho-
siery
$4,740.32
To set up commissions due on sales
to 6/30/50 by L. B. Hosiery Co.
$6,000.00
Less: payments charged to commis-
sions
1,259.68
$4,740.32 The journal entry was dated September 30, 1950. No reciprocal entry existed on the books of L. B. Hosiery, such as debit to accounts receivable and credit to an income account. No checks, bills, or vouchers were produced in substantiation when requested during the revenue agent's examination. A reconciliation of the "accounts receivable - Myerstown Hosiery" on the books of account of L. B. Hosiery with the "accounts payable - L. B. Hosiery" on the books of account of Myerstown Hosiery as of December 31, 1951, disclosed the following: L. B. Hosiery books, accounts receivable-
Myerstown Hosiery
Balance 12/31/51
$27,097.61
Add: Credits per Myerstown
books not reflected in L. B.
Hosiery books
39,062.95
$66,160.56
Subtract: Charges per Myerstown
books not reflected in L. B. Ho-
siery books
45,521.09
$20,639.47
Myerstown Hosiery Books, accounts payable-
L. B. Hosiery
Balance 12/31/51
$24,761.40
Add: Charges per L. B. Hosiery
books not reflected in Myers-
town books
62.86
$24,824.26
Subtract: Credits per
L. B. Hosiery books
not reflected in Myers-
town books
$3,684.79
Error in addition
500.00
4,184.79
$20,639.79
*176 Included in the total credits per Myerstown books not reflected on the L. B. Hosiery books ($39,062.95) are the credits to accounts payable of $32,716 and $4,740.32 previously referred to. The general journal of the L. B. Hosiery Co. contained the following entry dated March 31, 1950: Dr. Machinery & Equipment
$14,281
Cr. J. Lustman - Myerstown
$7,081
Commissioners received
7,200
To record acquisition of 4 Reading 45 Gauge 24 Sections used knitting machines from Jack Lustman and to apply commissions due on sale of 14,400 dozen hosiery at $.50 a dozen. The general ledger account entitled "Accounts Receivable - Myerstown Hosiery" showed that a credit of $7,081 was posted thereto dated March 31, 1950. The L. B. Hosiery Company general ledger also contained an entry recording a purported sale of these machines on April 1, 1950, to Fad Hosiery Mills in exchange for preferred stock. The general journal of the Myerstown Hosiery Co. contains the following entries: 6/30/50 as
Commissions
$7,200
of 12/31/49
Accounts Payable others
(L. B. Hosiery)
$ 7,200
To record commissions due
L. B. Hosiery on sale of
14,400 doz. at 50 cents per
dozen
$ 7,200
6/30/50
Accounts payable others
(L. B. Hosiery $14,281
J. Lustman personal)
14,281
To record payment to L. B.
Hosiery on account for
purchases of L. B. Ho-
siery per verbal instruc-
tions from Mr. Lustman
8/26/50
14,281
*177 The accounts payable ledger contains a debit in the amount of $14,281, dated June 30, 1950, and a credit in the amount of $7,200, dated June 30, 1950, as of December 31, 1949. No disallowance made by respondent involved any machinery transaction. Petitioners reported a net profit from the sole proprietorship, Myerstown Hosiery Mills, in Schedule C of their amended 1949 return. This schedule included "traveling expenses" of $2,293.51 which respondent allowed. Petitioners also claimed a deduction of $2,230 for "Auto and travel expense not compensated for - selling" on page 3 of the amended 1949 return which respondent disallowed. In their return for 1950, petitioners claimed a deduction for auto depreciation in the amount of $969.34. Respondent determined that the automobile had a useful life of five years and that it was used for business purposes 50 per cent of the time in 1950. Petitioner used his automobile in part for commuting from his home to his place of business and return. On March 10, 1950, the National Labor Relations Board issued a decision and order in the Matter of the L. B. Hosiery Co., Inc., and Lee Maisel, d/b/a Myerstown Hosiery Mills, and American Federation *178 of Hosiery Workers, Case No. 4-CA-59. On April 19, 1951, pursuant to a per curiam opinion reported at , dated March 1, 1951, the United States Court of Appeals for the Third Circuit entered a decree enforcing an order of the National Labor Relations Board in NLRB v. The L. B. Hosiery Co., Inc., and Lee Maisel, doing business as Myerstown Hosiery Mills, No. 10362. Said decree provided that the employers take action to: "Make whole the employees listed in Appendix A for any loss of pay they may have suffered by reason of the Respondents' discrimination against them, by payment to each of them of a sum of money equal to the amounts he or she normally would have earned as wages during the periods from the date of the discrimination against them: (1) to the date of the Respondents' offer of reinstatement in the case of Howard Kiscaddin, Russel R. Lutz, James R. Ludwig, Edwin L. Williamson, Francis Matz, and Paul Garnet, (2) to the date when reinstatement actually took place or was offered in the case of Lillian Gassert, Carrie Gassert, Grace Breidigan, Edith Schaeffer, Grace Hibshman, Hilda Miller, Pauline Haffer, Helen Kline, and Margaret Benninghoff, and (3) *179 to the date that reinstatement was declined in the case of Kenneth E. Hildebrand, less their net earnings during such periods." In June 1952, the board issued a supplemental decision and order determining the amount of back pay due to all except one employee, Paul Garnet, and on February 9, 1953, issued a second supplemental decision and order determining the amount of back pay due Paul Garnet. On January 16, 1954, the Court of Appeals entered a supplemental decree, providing in part: IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the respondents above-named, their officers, agents, successors and assigns, shall make whole the employees named below by payment to each employee of the following respective amounts: Howard Kiscaddin
$2,457.79
Lillian Gassert
304.00
Carrie Gassert
84.60
Grace Breidigen
304.00
Edith Schaeffer
24.48
Hilda Miller
238.64
Pauline Haffer
254.15
James R. Ludwig
4,174.87
Edwin L. Williamson
2,692.57
Russell R. Lutz
1,828.82
Francis Matz
3,806.72
Helen Kline
257.12
Paul Garnet
3,571.50
On December 6, 1954, the Court of Appeals entered an order to abate writ of attachment which provided as follows: "It appearing *180 that: "By decree filed in the above-entitled case on January 16, 1954, respondents were directed to pay named employees of the respondents $19,999.26; "By order of June 25, 1954 the Court adjudged the respondents in civil contempt and directed that they purge themselves of said contempt within sixty (60) days of the date of the order, by delivering to the Board certified checks or money orders payable to the employees involved covering the $19,999.26 due them, with interest at six percent (6%) from January 16, 1954; by paying the reporters' fees for recording the hearing before the Court and by paying the Board's costs of prosecuting the contempt proceedings; "The respondents failed to comply with the aforesaid order; "On September 13, 1954 the Court directed that a writ of attachment issue against Jack Lustman, agent and representative of the respondents; "Said writ of attachment issued September 16, 1954 and was served by the United States Marshal on Jack Lustman, on September 27, 1954. "Subsequent to the service of the writ of attachment Jack Lustman paid to the Board $19,999.26, with interest of $800.96, which sums have been distributed by the Board to the individual *181 employees specified in the decree of January 16, 1954; and costs amounting to $1,093.87. "Jack Lustman has also paid to the clerk of this Court $6.00 representing costs incurred by the United States Marshal in serving the writ of attachment on him. "From the facts herein before recited the Court finds as a fact that Jack Lustman has complied with the terms of the Court's decree of January 16, 1954 and order of June 25, 1954. "IT IS ORDERED that the writ of attachment issued September 16, 1954, be and it is hereby abated." The liability for back pay was not acknowledged during the years 1949 and 1950 and was in dispute in those years. Opinion At the outset, we call attention to the fact that neither the books and records of Myerstown Hosiery Mills nor those of L. B. Hosiery, Inc., were made available at the time of trial. The evidence of what became of them is sketchy. It seems likely that at the time of trial they either no longer existed, or, if they did then exist, neither party knew where they then were. There is no indication that either party could have produced them, or that their disappearance was the fault of either party. Obviously, in the absence of acceptable *182 secondary evidence, petitioner, who bore the burden of proof, must suffer the consequence of any failure of proof attributable to the absence of the books and records. On the other hand, at the time of examination of petitioner's returns, the books of both Myerstown and L. B. Hosiery were in the possession of petitioner's accountant. The examining agent asked the accountant to permit him to examine the books, and they were furnished to him by the accountant without objection or limitation. In fact, petitioner urges this action taken on his behalf by the accountant as evidence of petitioner's good faith. No question was raised as to the authenticity of the books of either Myerstown or L. B. Hosiery. The agent, during the examination, made transcripts from the books of entries which reflected on the items which he questioned. These transcripts are the source of the journal and ledger entries presented in the evidence. The agent's examination of the books formed the basis of his testimony showing negative findings such as absence of reciprocal entries in the books of Myerstown and L. B. Hosiery in transactions alleged to have been carried on between them. To avoid the need of repetition *183 in our discussions, infra, we point out here that the burden of proof with respect to all of the items to be considered rests with petitioner. I. Disallowance of Claimed Purchases of Merchandise Petitioners, on their amended return for 1949, claimed, as part of cost of sales, an item of $35,897 designated "Merchandise purchased for Resale." Respondent allowed $4,000 of this amount and disallowed $31,897. The journal entry keyed to this item on the books of Myerstown Hosiery Mills is set forth in our Findings. The debit is for "Finished goods purchases" and the explanation refers to purchases from L. B. Hosiery Mills "not entered on books." Book entries present some evidence of the transactions to which they relate, to be weighed in light of all relevant circumstances. They are not of themselves necessarily conclusive or binding. Here, we think that the surrounding circumstances demonstrate that no substantial weight may be attributed to the entry. Petitioner himself testified that this item had to do with the sale of machinery and equipment to L. B. Hosiery, Inc. Nothing in the journal entry refers to, or appears related to such a transaction. We think the record does indicate *184 a sale of machinery and equipment to L. B. Hosiery, but for a substantially different consideration and at a different time. That sale can have no relation to the item here in question, and has no bearing on respondent's disallowance of the item. Other than the journal entry above referred to, no substantiation of the item was presented by or on behalf of petitioner, although substantiation was requested by the examining agent at the time the return in question was audited. The books of L. B. Hosiery Co. did not show a reciprocal credit entry with respect to the alleged purchase. The journal entry itself was not made at the time of the alleged purchase from L. B. Hosiery. The entry was dated "6/30/50 as of 12/31/49." It is to be noted that the date of the actual entry is subsequent to March 15, 1950, the date of filing of petitioner's original return for 1949. Upon consideration of the foregoing circumstances, we hold that petitioner has failed to meet the burden of proof of error in respondent's determination disallowing this item. II. Disallowance of Miscellaneous Manufacturing Expense In his amended return for 1949, petitioner included in cost of goods manufactured, *185 an item of $1,394.81 designated as "Misc. Manufacturing Expenses." Respondent allowed $575.81 of this amount, but disallowed $819. The only basis offered in support of the disallowed amount is an item of that amount in the same journal entry as that discussed under Issue I, supra. The full journal entry is set forth in our Findings. We need only repeat that (a) no substantiation of the item was presented to the examining agent, although such substantiation was requested; (b) no reciprocal entry appeared on the books of L. B. Hosiery, Inc.; and the entry was not made at the time at which it is claimed that the item was paid or accrued, the entry being dated "6/30/50 as of 12/31/49." We sustain respondent on this issue. III. Disallowance of Commission Expense Petitioners claimed a deduction in their 1950 return for commission expense in the amount of $6,210. Respondent allowed $1,469.68 but disallowed $4,740.32. The only explanation offered with respect to the disallowed amount was a journal entry on the books of Myerstown, (see Findings) debiting commissions in the amount of $4,740.32, and crediting accounts payable L. B. Hosiery in a like amount. The journal entry was *186 dated September 30, 1950, and the attached explanation read "To set up commissions due on sales to 6/30/50 by L. B. Hosiery Co." There was no reciprocal entry on the books of L. B. Hosiery. Request for substantiation was made by the agent at the time of the examination, but no vouchers, checks, or other records showing ultimate payment were produced. Under the circumstances, we hold that the journal entry is not sufficient of itself to support petitioner's contention, and we hold for respondent on this issue for failure of petitioner to meet the burden of proof of error. IV. Disallowance of Auto and Travel Expense - 1949 Petitioners claimed travel expenses of $2,293.51 in the profit and loss statement of Myerstown Hosiery which respondent allowed. They also claimed "auto and travel expense not compensated for - selling" in the amount of $2,230. Respondent disallowed the latter. No records substantiating the claimed expenses were produced during the revenue agent's examination or at the trial. The only testimony was that of petitioner, Jack Lustman, who claimed that he used the car only for business. No estimates were given as to mileage travelled or as to the time spent away *187 from home. The only travel specifically mentioned is that of commuting between home and the Myerstown Hosiery plant, which is a personal expense and not deductible. It is clear that petitioners have failed to prove that they are entitled to an allowance in excess of the amount already allowed by respondent. V. Disallowance of Depreciation on Automobile - 1950 Respondent allowed automobile depreciation in the amount of $291.30 on the basis of a five-year life, and by allocating one-half of the total utilization to business purposes, the other half to personal use. He disallowed the balance of $678.04 claimed on the 1950 return. Petitioners claim that the car had only a three-year life. There is no evidence of the extent of use of the car and no facts are presented to justify a life of three years as distinguished from the five-year basis determined by respondent. Petitioners also claim that the car was used exclusively for business use, but this is contradicted by the fact that they only owned one car which Jack Lustman used in commuting to and from work. This shows that petitioners put the car to some personal use. There is no evidence from which we can find that business *188 use of the car exceeded 50 per cent of total use as determined by respondent. Petitioners have again failed to meet the burden of proof. VI. Contested Liability for Employees' Back Pay Petitioners in their petition to this Court claim a deduction for the years 1949 and 1950 in the total amount of $19,999.26 for back pay of employees. They do not attempt to allocate any particular amount to either year. The books and returns of petitioner were on an accrual basis. No deduction was taken for any part of this amount in the income tax returns for either year. Accordingly, there has been no disallowance for either year, and petitioners, in effect are raising a new issue. The documentary evidence shows that on March 10, 1950, the National Labor Relations Board issued a decision and order in the Matter of The L. B. Hosiery Co., Inc. and Lee Maisel, d/b/a Myerstown Hosiery, which order was affirmed and a decree of enforcement issued by the Court of Appeals for the Third Circuit on April 18, 1951, in . The decision provided, among other things, that the employers make certain *189 employees whole for any loss of pay. On June 11, 1952, the board handed down a supplemental decision and order. This supplemental decision for the first time fixed the amounts due in the case of all employees except one Paul Garnet, whose back pay was not fixed in amount until February 3, 1953. A supplemental decree of enforcement was entered by the Court of Appeals on January 16, 1954. This decree was not complied with, and on June 25, 1954, the Court of Appeals adjudged the employers in civil contempt. On September 13, 1954, the Court directed that a writ of attachment issue against the body of "Jack Lustman, Agent and Representative of the Respondents." Between September 27, 1954, and December 6, 1954, Jack Lustman paid $19,999.26 to the board in compliance with the decree of January 1954 and the writ of attachment was abated. It is clear that the liability for back pay was not fixed prior to March 1, 1951, the date of the original Decision of the Court of Appeals. Until that time, at least, the liability was contested, in amount. Under the circumstances, the liability cannot be accrued in 1949 or 1950. ; *190 . It is true that under date of November 14, 1950, Jack Lustman wrote a letter offering $10,000 in settlement of the question of employees' back pay. The letter, however, did not admit or acknowledge liability in the amount of $10,000 or in any other amount. It was merely an offer to settle at a time when the Court of Appeals had not yet affirmed the order of the National Labor Relations Board, and when the liability was still uncertain as to existence and unliquidated as to amount. The ultimate liability was fixed at $19,999.26, but this was not done until after the taxable years in question. Under the circumstances, petitioners' claim under this issue must be disallowed. VII. Medical Expenses Petitioners claimed a deduction for medical expenses in the taxable years 1949 and 1950 in the respective amounts of $1,824.03 and $1,368.69. Respondent allowed $181.81 and $1,256.65, as representing the excess of such expenses over five per cent of the adjusted gross income as determined in the statutory notice. The issue is merely one of computation, and will be determined under Rule 50. Decision will be entered *191 under Rule 50.